**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

EMERSON ELECTRIC CO., )
)
Plaintiff, )
)
v. ) No. 4:25-CV-1312 HEA
)
JACOB CEASAR, )
)
Defendant. )

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Jacob Ceasar's Motion to Dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. (ECF No. 11). Plaintiff Emerson Electric Co. ("Emerson") opposes the motion. For the reasons that follow, the Court denies Defendant Ceasar's Motion to Dismiss for lack of personal jurisdiction.

***I. Background***

Emerson filed suit against Defendant Ceasar on August 29, 2025, seeking to enforce non-competition and confidentiality agreements. Emerson alleges Defendant Ceasar was an employee of Micro Motion, Inc., an indirect, wholly owned subsidiary of Emerson. According to Emerson, Defendant Ceasar recently resigned from his senior leadership position within Emerson to take a similar position at Endress+Hauser, a direct competitor of Emerson. Emerson contends

Defendant Ceasar took a position with Endress+Hauser, despite being fully aware that he had signed a non-competition agreement with Emerson in exchange for the grant of stock units. Emerson further alleges that during his employment, Defendant Ceasar was privy to highly sensitive, confidential information regarding Emerson's global business. Emerson asks the Court to enjoin Defendant Ceasar from working for Endress+Hauser, and it filed a motion for a temporary restraining order, which is pending before the Court.

In its Complaint, Emerson brings claims for Breach of Contract (Count I); violations of the Missouri Uniform Trade Secrets Act ("MUTSA") (Count II); Unfair Competition (Count III); and for Injunctive Relief (Count IV). Emerson avers that there is personal jurisdiction over Defendant Ceasar, a Texas resident, in this Court because Defendant Ceasar entered into an agreement with Emerson whereby he expressly agreed to submit to the jurisdiction of this Court.[1]

Defendant Ceasar responded to the Complaint by filing a Motion to Dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), the motion presently before the Court. Defendant Ceasar disputes that he signed the agreement. Defendant Ceasar has not responded to Emerson's motion for temporary restraining order.

[1]Emerson also avers that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because the parties have diverse citizenship, and the amount in controversy exceeds $75,000.

On September 8, 2025, the Court heard argument regarding Defendant Ceasar's Motion to Dismiss and Emerson's Motion for Temporary Restraining Order. The Court ordered the parties to provide additional briefing regarding the choice of law for the contract formation in this case, which the parties have done.

## ***II. Legal Standard***

When personal jurisdiction is challenged, the party seeking to invoke the jurisdiction of a federal court bears the burden to establish that jurisdiction exists. *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) (citations omitted). To survive a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), "a plaintiff must make a *prima facie* showing of personal jurisdiction by pleading facts sufficient to support 'a reasonable inference that the defendant[ ] can be subjected to jurisdiction within the state.'" *Valez v. Portfolio Recovery Assocs.,* 881 F. Supp. 3d 1075, 1080 (E.D. Mo. 2012) (quoting *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 591–92 (8th Cir. 2011) (internal quotations and citations omitted)). A defendant can make a factual challenge to personal jurisdiction, but "[t]he allegations in the Complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *Cantrell v. Extradition Corp. of Am.*, 789 F. Supp. 306, 308–09 (W.D. Mo. 1992); *see also Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1076 (8th Cir. 2004). If the parties present conflicting affidavits, the Court "must view the evidence in the light most favorable to the

plaintiff and resolve all factual conflicts in [his] favor in deciding whether the plaintiff made the requisite showing." *K-V Pharmaceutical Co.*, 648 F.3d at 591–92) (citing *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996)). "The evidentiary showing required at the *prima facie* stage is minimal." *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010) (quotation omitted). "[J]urisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing." *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991).[2]

### *III. Discussion*

At issue is whether there is evidence Defendant Ceasar entered into an agreement with Emerson that contained a mandatory forum-selection clause. The Supreme Court has recognized that a mandatory forum-selection clause is *prima facie* valid and "should control absent a strong showing that it should be set aside." *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 15 (1972). *See also M.B. Restaurants, Inc. v. CKE Restaurants, Inc.*, 183 F.3d 750, 752 (8th Cir. 1999) ("Forum selection clauses are *prima facie* valid and are enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching."). "Due process is satisfied when a defendant consents to personal jurisdiction by entering

[2]The September 8, 2025 hearing was not an evidentiary hearing on the issue of personal jurisdiction. No witnesses testified, and neither side presented evidence at the hearing. Indeed, the attorneys presented argument only.

into a contract that contains a valid forum selection clause." *Dominium Austin Partners, L.L.C. v. Emerson*, 248 F.3d 720, 726 (8th Cir. 2001) (citations omitted); *see also Bunge N. Am., Inc. v. Mickelson*, No. 4:21-CV-961 DDN, 2022 WL 266675, at *5 (E.D. Mo. Jan. 28, 2022); *GP&W Inc. v. Daibes Oil, LLC*, 497 S.W.3d 866, 869 (Mo. Ct. App. 2016) ("Although it is generally necessary to satisfy the Missouri long-arm statute to obtain *in personam* jurisdiction over a nonresident defendant pursuant to Section 506.500, jurisdiction over the person may be also obtained by consent or by waiver.").

Emerson maintains that Defendant Cesear has waived objections to personal jurisdiction in this Court because he entered into an agreement with Emerson that contains a mandatory forum selection clause. Emerson attached to its Complaint the Emerson Fiscal 2025-2027 Restricted Stock United Program Award Agreement ("RSU Agreement"), which Emerson contends Defendant Ceasar agreed to and signed on December 12, 2024. The RSU Agreement contains the following provision:

> This Award and Agreement are governed by Missouri law, without regard to any conflicts of law principles thereof, and *you consent that jurisdiction to resolve any disputes rests exclusively in the courts in the U.S. District Court for the Eastern District of Missouri* or the Circuit Court for the County of St. Louis, and further consent to accept service of process in those courts should a dispute arise.
>
> (ECF No. 1, Ex. 1 at 4) (emphasis added).

Defendant Ceasar does not challenge the validity of the forum selection clause or dispute that the Agreement contains such a clause, but rather, he denies that he ever entered into the RSU Agreement. In support of his argument, Defendant Ceasar executed an affidavit in which he attests that he has no recollection of signing the RSU Agreement. Defendant Ceasar also points to the fact that the RSU Agreement attached to the Complaint does not bear his signature or a confirmation of his signature through an application such as DocuSign, and he argues that contemporaneous communications confirm that he did not sign the RSU Agreement.

In response to Defendant Ceasar's motion, Emerson submitted the declaration of Martin Hirsch, an employee of Bank of America Merrill Lynch Workplace Benefits, which administers Emerson's stock option program. Mr. Hirsch attached to his declaration a Grant Award Status Report for Emerson that shows Defendant Ceasar was granted 227 Restricted Stock Units on November 4, 2024, and that he accepted the award of 227 Restricted Stock Units on December 12, 2024 at 10:50:57 p.m. According to Mr. Hirsch, the date and time is tracked by Benefits OnLine®, an internet-based system.

Mr. Hirsh attests that in order to view and accept the RSU Agreement, Defendant Cesear visited the Benefits OnLine® system and logged on to his account. According to screenshots attached to Mr. Hirsh's declaration, employees must open and review the RSU Agreement before selecting and clicking on the option to accept

the agreement. (ECF No. 18, Ex. 2 at 12). Once the agreement is accepted, the employee is prompted to enter the correct password to confirm that the agreement was accepted. Mr. Hirsh further attests to the following:

> Our system is set up so that when an employee such as Mr. Ceasar accepts the grant award (as Mr. Ceasar did on December 12, 2024), the system applies the employee's name and acceptance date to the Restricted Stock Units Award Agreement. This only happens when the employee reviews the award agreement and affirmatively accepts the award agreement. The employee must open the award agreement and scroll all the way through it before it can be accepted.

(ECF No. 18, Ex. 2 at 3).

Emerson also attached to its response memorandum copies of email correspondence. In an email dated December 12, 2024, Emerson notified recipients that they had been awarded a Restricted Stock Units award and directions were provided regarding setting up accounts through Merrill Lynch Benefits Online to accept the award. The December 12, 2024 email states, "Full terms and conditions of your individual award are governed by the award agreement, plan document and offering circular, all of which are provided to you during the online award acceptance process." (ECF No. 18, Ex. 1 at 5). On July 22, 2025, Defendant Ceasar forwarded the December 12, 2024 email to Patty Hayes and wrote, "I never received a copy of the paperwork that I signed when this account was created. (*Id.* at 4). On July 22, 2025, Ms. Hayes responded to Defendant Ceasar's email inquiry and

provided directions on how to access documents related to the restricted stock award. (*Id.* at 2-3).

Defendant Ceasar contends that he did not accept the terms of the RSU Agreement, and his signature was attached without his consent and, therefore, a contract was never formed. As to the issue of contract formation, Defendant Ceasar argues that Texas law applies, because he is a resident of Texas. Emerson argues that Missouri law applies, but it maintains that the outcome is the same under both states' laws – that Defendant Ceasar accepted the terms of the RSU Agreement electronically.

"District courts sitting in diversity apply the choice-of-law rules of the state where they sit." *Winter v. Novartis Pharms. Corp.*, 739 F.3d 405, 410 (8th Cir. 2014). "Before applying the forum state's choice-of-law rules, however, a trial court must first determine whether a conflict exists." *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007). "If the outcome would be the same under either state's law, the Court need not decide which state's law applies." *Seals v. Wright Med. Tech., Inc.*, No. 4:20-CV-1656 SRC, 2022 WL 16740107, at *2 (E.D. Mo. Nov. 7, 2022). *See also Kamrath*, 475 F.3d at 924 ("We need not decide whether Missouri law or New York law applies in this case because the outcome would be the same under either law."). The Court agrees with Emerson that the outcome is the same under either state's laws.

For there to be a valid contract, Missouri law requires offer, acceptance, and consideration. *See Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. 2014) (en banc). "If a party fails to prove one of the elements of a breach of contract action, his claim fails." *Midwest Bankcentre v. Old Republic Title Co. of St. Louis*, 247 S.W.3d 116, 128 (Mo. Ct. App. 2008). In Texas, "a legally enforceable contract consists of (1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 72 (Tex. App. 2010). Defendant Ceasar disputes that he accepted and consented to the terms of the RSU Agreement, which was purportedly done online.

Both Missouri and Texas enforce agreements that are executed electronically, and they both have adopted the Uniform Electronic Transactions Act ("UETA"). The UETA provides as follows:

> 1. An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable.
>
> 2. The effect of an electronic record or electronic signature attributed to a person under subsection 1 of this section is determined from the context and surrounding circumstances at the time of its creation, execution, or adoption, including the parties' agreement, if any, and otherwise as provided by law.

Mo. Rev. Stat. § 432.240. *See also* Tex. Bus. & Com. Code § 322.009. The UETA further provides that "[a] record or signature shall not be denied legal effect or enforceability solely because it is in electronic form." Mo. Rev. Stat. § 432.230.1. *See also* Tex. Bus. & Com. Code § 322.007(a). In addition, the UETA provides, "[i]f a law requires a signature, an electronic signature satisfies the law." Mo. Rev. Stat. § 432.230.4; Tex. Bus. & Com. Code § 322.007(d). The UETA defines "electronic signature" as "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." Mo. Rev. Stat. § 432.205.8; Tex. Bus. & Com. Code § 322.002(8)

The Court agrees with Emerson that courts in Missouri and Texas have consistently found sufficient evidence of contract acceptance under circumstances similar to those present in this case. *See, e.g., Aerotek, Inc. v. Boyd*, 624 S.W.3d 199, 209 (Tex. 2021) (evidence of security procedures used for hiring application, such as the required entry of a password and time-stamped data, established employees had signed arbitration agreement); *Discover Bank v. Miller*, No. 01-23-00513-CV, 2025 WL 2109891, at *7 (Tex. App. July 29, 2025) (finding plaintiff had accepted the terms of the loan agreement by hitting "Continue"); *Doe v. Occidental Petroleum Corp.*, No. 01-23-00196-CV, 2024 WL 3973431, at *4 (Tex. App. Aug. 29, 2024), review denied (Jan. 17, 2025) (finding employee had accepted terms of

agreement where employee was required to click on a box to open the agreement and was required to re-enter her password to complete the acceptance); *Hearn v. Uber Techs., Inc.*, No. CV H-21-3465, 2022 WL 20691054, at *4 (S.D. Tex. May 27, 2022) (finding plaintiff accepted agreement by accessing password-protected account and clicking "YES, I AGREE"); *Taylor v. Dolgencorp*, LLC., No. 1:19-CV-00132 SNLJ, 2019 WL 6135440, at *3 (E.D. Mo. Nov. 19, 2019) (finding plaintiff assented to the agreement electronically by logging in with her social security number and birth date and by clicking an acceptance box that generated her initials electronically on the agreement); *Franklin v. Cracker Barrell Old Country Store*, 4:17-CV-289 JMB, 2017 WL 7691757, at *2, *4 (E.D. Mo. Apr. 12, 2017) ("Once an employee clicks 'Mark Complete' [the system] creates a record of the date and time that the employee completed the module, thereby agreeing to comply with the Arbitration Agreement."); *Strain v. Murphy Oil USA, Inc.*, No. 6:15-CV-3246-MDH, 2016 WL 540810, at *3 (W.D. Mo. Feb. 9, 2016) (finding plaintiff accepted arbitration agreement by entering social security number and name online and checking an acceptance box).

Defendant Ceasar argues that review of Mr. Hirsch's affidavit and the attachments thereto show that Bank of America Merryl Lynch never advised Emerson employees that their actions would cause the computer system to automatically apply that person's signature to the Award Agreement. He contends

that Emerson has failed to prove the "/s/ Jacob Ceasar" signature that Bank of America Merryl Lynch's system applied to the RSU Agreement was done as a result of his actions.

Whether or not the computer system notified the user that it would attach a signature is not dispositive as to the issue of contract formation. "Contracts require mutual assent to be enforceable." *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex. 2007). "Typically, a party manifests its assent by signing an agreement." *Rachal v. Reitz*, 403 S.W.3d 840, 845 (Tex. 2013). However, "while signature and delivery are often evidence of the mutual assent required for a contract, they are not essential." *Phillips v. Carlton Energy Grp., LLC*, 475 S.W.3d 265, 277 (Tex. 2015). Here, there is evidence that Defendant Ceasar was presented with the RSU Agreement, which he was required to scroll through; he was then required to indicate whether he accepted the RSU Agreement by clicking on an "Accept" field; and his selection was confirmed by the entry of a password. This evidence is enough to show he accepted the terms of the RSU Agreement.[3] *Doe*, 2024 WL 3973431, at *4.

---

[3]But there is evidence in the record that Defendant Ceasar did "sign" the RSU Agreement. Defendant Ceasar wrote in an email to Patti Hayes dated July 22, 2025, in which he wrote, "I never received a copy of the paperwork that I *signed* when this account was created." (ECF No. 18 at 4) (emphasis added). Ms. Hayes responded by showing Defendant Ceasar how to access the RSU Agreement on the Benefits Online portal. (*Id.* at 2-3).

Defendant Ceasar also argues that there is insufficient evidence in the record that Emerson made a clear and definite offer of the RSU Agreement. He points to the fact that the language in the online portal states the following:

> I accept this grant and agree to terms and conditions set forth in the Corporate Incentive Plan, the standard terms and conditions document and "[sic]all other applicable documents.[4]

(ECF No. 18, Ex. 2 at 13). He argues that this provision does not identify the RSU Agreement as a document he was accepting, and by not expressly identifying the RSU Agreement in the "Accept" screen, Emerson created an unclear and non-definite offer and did not provide fair notice of what he was accepting.

Based on the screenshot in the record, it appears that a link to the RSU Agreement was provided above the "Accept" field, and Mr. Hirsh attests in his declaration that employees were required to open and scroll all the way through the RSU Agreement before they could indicate that they accepted the agreement. The Court finds Defendant Ceasar's argument that Emerson's offer was unclear or indefinite is without merit.

---

[4]In his brief, Defendant Ceasar faults Emerson for providing "exemplars" of screenshots from the Benefits OnLine® system and not screenshots of what he would have actually seen. In his affidavit, Mr. Hirsh describes how the system works in general, and he attests that the screenshots explain "how a grant recipient from a particular company such as Emerson can accept their award through our company's Benefits OnLine® system." (ECF No. 18, Ex. 2 at 2). Defendant Ceasar has neither described how the screenshots are inaccurate, nor submitted into the record evidence, such as his own screenshots, of what he saw when he logged on to the Benefits OnLine® system.

Finally, Defendant Ceasar states that it is uncontested that he never completed all the steps that were required to accept the stock award and, therefore, no contract was finalized. He points to the fact that in order to accept and manage his award, he was required to open a Merrill Benefits Online account *and* create a Limited Individual Investor Account brokerage account. Defendant Ceasar submitted evidence that he never opened a Limited Individual Investor Account brokerage account.

According to the email dated December 12, 2024, to "accept and access [his] award information," Defendant Ceasar was required to open a Limited Individual Investor Account brokerage account, which would be used to deliver the stock award. (ECF No. 12, Ex. 1 at 8). The email further states, "Once your accounts have been created, you can then accept your award." (*Id.*) The email also provides, "Full terms and conditions of your individual award are governed by the award agreement, plan documents and offering circular, all of which are provided to you during the only award acceptance process." (*Id.* at 8-9). Other than quoting language in this email, Defendant Ceasar has pointed to no other evidence to show that opening a brokerage account was a term or condition of the RSU Agreement. For example, he has not cited the language of the agreement itself, plan documents, or the "offering circular." At most, Defendant Ceasar has raised a dispute of fact as

to whether he was required to create a Limited Individual Investor Account brokerage account in order to accept the terms of the RSU Agreement.

The Court has carefully reviewed Emerson's allegations, the RSU Agreement, Mr. Hirsh's declaration, Defendant Cesear's declaration, and the exhibits and finds that is evidence in the record that Defendant Ceasar logged into the Benefits OnLine® system and accessed, scrolled through, and affirmatively accepted the RSU Agreement. Viewing the evidence in the light most favorable to Emerson and resolving all factual conflicts in its favor, as the Court must do at this stage in the proceedings, the Court finds Emerson has made the requisite showing that Defendant Ceasar entered into the RSU Agreement, which contains a mandatory forum-selection clause, and thus he has consented to jurisdiction in this Court. *K-V Pharmaceutical Co.*, 648 F.3d at 591.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Jacob Ceasar's Motion to Dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure is **DENIED.** [ECF No. 11]

Dated this 19th day of September, 2025.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE